637 So.2d 398 (1994)
STATE of Louisiana
v.
Wilfred A. SMITH.
No. 91-KA-0749.
Supreme Court of Louisiana.
May 23, 1994.
Elizabeth W. Cole, New Orleans, for applicant.
Wilfred Smith, pro se.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jack Peebles, Hans P. Sinha, Valentin M. Solino, New Orleans, for respondent.
CALOGERO, Chief Justice.[1]
We consider in this appeal from a conviction for second degree murder whether there is a reasonable likelihood that an instruction by the trial judge on reasonable doubt was perceived and applied by the jury unconstitutionally, that is, in a manner which would allow a finding of guilt based on a degree of proof below that which is constitutionally required. If so, we must also determine whether the absence of a contemporaneous objection (a procedural defect) precludes relief. Responsive to the United States Supreme Court decision in Victor v. Nebraska, *399 511 U.S. ___, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), wherein similar jury charges on reasonable doubt were found constitutionally sound, we conclude that the instruction before us was also without constitutional defect. Taken as a whole and reviewed under the standard approved by Victor, the charge here adequately conveys the concept of reasonable doubt to the jury. We therefore need not decide whether failure to object contemporaneously to an improper reasonable doubt instruction bars relief on appeal. In addition, we conclude that the conduct of the proceedings did not render the trial in this case fundamentally unfair.
Defendant Wilfred A. Smith was charged with a violation of La.Rev.Stat.Ann. § 14:30.1 (West 1977), for the August 14, 1978 murder of Michael Foe. According to the two companions of the victim at the time of the shooting, the three were walking on a New Orleans street when they noticed the defendant in a parked car. After a verbal exchange with one of them, the defendant allegedly drove beside the group, pointed a shotgun at them, fired, then sped away. Michael Foe absorbed eight pellets from the blast and died from internal bleeding. In his defense, Smith urged an alibi. He claimed that at the time of the shooting he and his brother, Wardell Smith, had driven to a different location to purchase marijuana and then beer, before returning to Wardell's house, where the brothers learned of the murder from their mother.
A trial was conducted on July 18 and 19, 1979. Although jury selection began at 10:00 a.m., the trial did not begin until the evening of that day. The jury heard evidence until 12:41 a.m. on July 19, at which time they received the court's charge. As part of the instructions, the jury was given the following reasonable doubt charge:
The defendant is presumed to be innocent until he is proved guilty beyond a reasonable doubt. The consequence of this rule is that he is not required to prove his innocence but may rest upon the presumption in his favor until it is overcome by positive affirmative proof.
The onus, therefore, is on the State to establish to your satisfaction and beyond a reasonable doubt, the guilt of the accused as to the crime charged or any lesser one included in it.
If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal.
Even where the evidence demonstrates a probability of guilt, yet, if it does not establish it beyond a reasonable doubt, you must acquit the accused.
This doubt must be a reasonable one, that is one founded upon a real, tangible, substantial basis and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt.
If after giving a fair and impartial consideration to all the facts in the case you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.
A reasonable doubt is not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable person would seriously entertain. It is a serious doubt for which you could give a good reason.
After deliberating for a total of three hours and thirty minutes in the early morning hours of July 19 as well as when the panel was returned to court at 10:00 a.m. later on the same day, the jurors found the defendant guilty as charged. On July 27, 1979, defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for forty years. Defense counsel's oral motion for an appeal was granted. The case was not in a position to be reviewed, however, until late 1993.[2] On *400 appeal, the defendant and his counsel raise as error both (I) the jury instruction as to reasonable doubt and (II) the conduct of proceedings in the trial court.

I.
A significant consequence of the delay in defendant's appeal is that it was pending on direct review[3] when the United States Supreme Court rendered a series of decisions affecting the reasonable doubt charge much like the one given in this case. In addition to Victor v. Nebraska, the Court decided Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990); Estelle v. McGuire, ___ U.S. ___, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); and Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt, a higher degree of persuasion than in civil cases, dates from the early years of our nation's history. In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). Providing "concrete substance for the presumption of innocence," the reasonable doubt standard is a "prime instrument for reducing the risk of convictions resting on factual error." Id. at 363, 90 S.Ct. at 1072. Finding that the reasonable doubt standard reaches constitutional stature, the Court explicitly held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364, 90 S.Ct. at 1073.
In 1989, this Court, in State v. Cage, 554 So.2d 39 (La.1989), considered whether the trial judge erred in improperly instructing the jury regarding reasonable doubt.[4] We *401 acknowledged the possibility that if certain terms used in the instruction, such as "grave uncertainty" and "moral certainty," were taken out of context, they might be understood to overstate the requisite degree of uncertainty and might confuse the jury. However, when we considered the charge as a whole, the Court found that this definition of "reasonable doubt" would be understood by "reasonable persons of ordinary intelligence." No single justice took issue with this part of the opinion. Justice Dennis concurred in part and dissented in part, finding prejudicial error only during the penalty phase of the bifurcated trial.
On writ of certiorari, the United States Supreme Court reversed our decision and held, in a per curiam opinion, that the charge was constitutionally deficient. Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Supreme Court concluded that jury charges which equated reasonable doubt with a "grave uncertainty," and an "actual substantial doubt," and which stated that a "moral certainty" of the accused's guilt was required were improper. The words "substantial" and "grave" were found to suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. Furthermore, when coupled with reference to "moral certainty," the wording of the jury instruction could have been understood by a reasonable juror "to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." Cage, 498 U.S. at 41, 111 S.Ct. at 330 (emphasis added). Therefore, the judgment in Cage was reversed by the United States Supreme Court and remanded to this Court for further proceedings.
After remand, this Court held that the erroneous reasonable doubt charge given by the trial judge during the guilt phase of Cage's trial was a "trial error," as opposed to a structural error, and, as such, was subject to the harmless error analysis adopted in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Viewing the record as a whole, the majority concluded that the jury had sufficient evidence to convict Cage beyond a reasonable doubt and found that the erroneous instruction did not contribute to defendant's conviction or sentence and thus was harmless error. State v. Cage, 583 So.2d 1125, 1129 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).[5] The two dissenters to that opinion had originally joined the majority in finding that reasonable persons of ordinary intelligence would have properly understood the Cage instruction on reasonable doubt. However, having been instructed by the United States Supreme Court that a reasonable juror could have interpreted that instruction to allow a finding of guilt based *402 on a degree of proof below that required by the Due Process Clause and that the Cage instruction was thus constitutionally deficient, they expressed the view that an erroneous reasonable doubt instruction cannot be harmless. (Calogero, C.J. in dissent; similar position taken by Dennis, J.)
In reviewing the allegedly erroneous jury charge, the United States Supreme Court in Cage asked whether a reasonable juror "could have" misapplied the instruction, a standard first used in Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). However, during the term before Cage was decided, the Court in Boyde v. California, 494 U.S. at 380, 110 S.Ct. at 1198, had determined that the proper inquiry in reviewing jury instructions is "whether there is a reasonable likelihood that the jury has applied the challenged instruction" in an unconstitutional manner. The Court acknowledged that a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction," but concluded that a proceeding is not inconsistent with the Constitution if there is only a possibility of such an inhibition. In adopting this reasonable likelihood standard, the Court noted that "[t]here is, of course, a strong policy in favor of accurate determination of the [question before the jury], but there is an equally strong policy against retrials years after the first trial where the claimed error amounts to no more than speculation." Id. After considering the different standards of review for jury instructions which previously had been used, including those in Cage (1990) and in Boyde (1990), in 1991, the United States Supreme Court in Estelle v. McGuire, ___ U.S. at ___ n. 4, 112 S.Ct. at 482 n. 4, settled on Boyde's "`reasonable likelihood' standard." Was there a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional mannera different, less defense favorable standard than that employed in Cage.
In Sullivan, the United States Supreme Court did not have to consider whether the instruction given in that case would survive review under the Boyde/McGuire's, "reasonable likelihood" standard. ___ U.S. at ___ n. 1, 113 S.Ct. at 2081 n. 1. After the State conceded that the Sullivan trial transcript included a reasonable doubt instruction "essentially identical" to that in Cage, the Supreme Court held that a constitutionally deficient reasonable doubt instruction vitiates all the jury's factual findings and will always result in the absence of an appropriate "beyond a reasonable doubt" jury finding. As a structural defect in the trial mechanism, the improper instruction could not be subject to harmless-error analysis, according to the Sullivan Court, which agreed with the dissenters in this Court in State v. Cage on remand. Sullivan, ___ U.S. at ___, 113 S.Ct. at 2082.
Most recently, in Victor v. Nebraska, the Supreme Court reaffirmed the Boyde/McGuire standard. The proper inquiry in reviewing a jury instruction is whether there is a reasonable likelihood that the jury applied it in an unconstitutional manner. 511 U.S. at ___, 114 S.Ct. at 1241, 127 L.Ed.2d at 589. Having established the applicable standard of review, the Court considered the constitutionality of attempts by courts in Nebraska and California to define "reasonable doubt." Noting that the Constitution does not require either that "reasonable doubt" be defined to the jury as a matter of course or that any particular words be used to advise the jury of the government's beyond a reasonable doubt burden of proof, that Court, quoting Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137-138, 99 L.Ed. 150 (1954), concluded that the instructions given by the Nebraska and California courts, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury. 511 U.S. at ___, 114 S.Ct. at 1251, 127 L.Ed.2d at 601. Furthermore, said the majority in Victor, in only Cage v. Louisiana had the United States Supreme Court held a definition of reasonable doubt to violate the Due Process Clause. 511 U.S. at ___, 114 S.Ct. at 1243, 127 L.Ed.2d at 590.
One might conclude that the United States Supreme Court has retrenched from its position in Cage. There is a significant difference between "whether the instruction `could have' been applied in an unconstitutional manner, [and] whether there is a reasonable *403 likelihood that the jury did so apply it," the proper inquiry according to the Victor Court. Id. 511 U.S. at ___, 114 S.Ct. at 1243, 127 L.Ed.2d at 591. In reviewing a suspect jury charge on reasonable doubt, we now are instructed by the Supreme Court to determine whether it is reasonably likely that an instruction was applied improperly, rather than whether it is only possible that the misapplication occurred. Mere conjecture concerning a juror's response to a charge, a conjecture encouraged in Cage, is no longer favored.
Not only did that Court change the standard for the review of an allegedly erroneous jury charge on reasonable doubt (from that recited in Cage), but they also seem to have drawn a fine line to distinguish the similarly suspect reasonable doubt charges in California and in Nebraska from the one given in Cage.[6] Terms like "moral certainty" and "substantial doubt" were included in the Victor jury charges, and they have passed constitutional muster in this most recent expression on the reasonable doubt instructions by the United States Supreme Court. However, while Cage focused on the presence of the suspect terms in the instruction, the Victor court considered the relationship of the terms to the instruction as a whole to determine whether the jurors were reasonably likely to have misapplied the instruction. The Court found that each charge (and the same can be said although perhaps to a lesser degree regarding the Cage instruction[7]) contained an interplay of concepts and supplemental instructions which put the reasonable doubt focus in a proper perspective.
What follows is an abbreviated recitation of the reasons given by the United States Supreme Court in support of the proposition that the Cage instruction is distinguishable from the California and Nebraska instructions found in Victor. In Sandoval v. California, No. 92-9049 (a case consolidated with Victor), the defendant's primary objection to the instruction was its use of the phrases "moral evidence" and "moral certainty."[8] 511 U.S. at ___, 114 S.Ct. at 1245, 127 L.Ed.2d at 593. The Court acknowledged that these phrases are not a "mainstay of the modern lexicon" and that phrases understood in the 19th century may be incomprehensible or confusing to a modern juror. While accepting the premise that "moral certainty," standing alone, might not be recognized by modern jurors as a synonym for "proof beyond a reasonable doubt," the Court concluded that it did not necessarily follow that the instruction is unconstitutional. Id. 511 U.S. at ___, 114 S.Ct. at 1247, 127 L.Ed.2d at 595. In fact, the Court found that the rest of the instruction lent content to the phrase. They were satisfied that the reference to moral certainty, in conjunction with the abiding conviction language, "impresses upon the factfinder the need to reach a subjective state of near certitude of the *404 guilt of the accused." Id. at ___, 114 S.Ct. at 1247, 127 L.Ed.2d at 596 (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979)). Accordingly, the Court rejected defendant's contention that the moral certainty element of the California instruction invited the jury to convict him on proof below that required by the Due Process Clause.
The Court also rejected Sandoval's suggestion that the "moral certainty" language in that case might allow a juror to find the defendant guilty even though the government has failed to prove his guilt beyond a reasonable doubt. The Court believed that, in the Cage instruction, the jurors were simply told that they had to be morally certain of the defendant's guilt, with nothing else in the instruction to lend meaning to the phrase. In the California instruction, however, the jurors were explicitly told that their conclusion had to be based on the evidence in the case, and this message was reinforced by other instructions. Id. 511 U.S. at ___, 114 S.Ct. at 1248, 127 L.Ed.2d at 597. Therefore, the Court found that "there is no reasonable likelihood that the jury would have understood `moral certainty' to be disassociated from the evidence in the case." Id.
In response to Sandoval's objection to the portion of the charge in which the judge instructed the jury that a reasonable doubt is "not a mere possible doubt," the Court noted that it did not find anything wrong with that part of an almost identical reference contained in the Cage charge. The Court interpreted the use of the term "possible" in the instruction to mean a fanciful doubt rather than one based on reason and, accordingly, they rejected this challenge to the instruction as well. Id.
Regarding the Nebraska instruction given in the companion case, (Victor No. 92-8894), the defendant's primary argument was that reasonable doubt was equated with a "substantial doubt," which overstated the degree of doubt necessary for acquittal.[9] While finding this construction somewhat problematic, the Court found that any ambiguity is removed by reading the phrase in the context of the sentence in which it appears. Id. 511 U.S. at ___, 114 S.Ct. at 1250, 127 L.Ed.2d at 599. In Victor, substantial doubt is distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture. Furthermore, the Court noted that it had not held in Cage that the reference to substantial doubt alone was sufficient to render the instruction unconstitutional. Instead, the Court had been concerned that the jury would interpret the term "substantial doubt" in parallel with the immediately preceding reference to "grave uncertainty," which would lead to the overstatement of the doubt necessary to acquit. No such concern exists in Victor where the context of the instruction made it clear that "substantial" is used in the sense of the existence, rather than the magnitude, of doubt. Furthermore, the Court found that an alternative definition of reasonable doubt, "a doubt as would cause a reasonable and prudent person ... to pause and hesitate before taking the represented facts as true," was an approved formulation, which gave a common-sense benchmark for calculating the quantum of doubt necessary for acquittal (or obstruction of a conviction). The Court therefore concluded that it was *405 not reasonably likely that the jury would have interpreted this instruction to indicate that the doubt must be anything other than a reasonable one. Id.
The moral certainty portion of the Nebraska charge was also challenged by Victor. Unlike the instruction in Cage, wherein moral certainty was "clearly related to the defendant's guilt" and "the rest of the instruction provided insufficient context to lend meaning to the phrase," the Nebraska instruction was found by the Supreme Court not to be constitutionally deficient. The Court concluded that an instruction that jurors must have an abiding conviction of the defendant's guilt helped to alleviate concerns that, in the abstract, they might misunderstand the moral certainty phrase. Additional instructions, which equated a doubt sufficient to preclude moral certainty with a doubt that would cause a reasonable person to hesitate to act, and that told jurors that they must be convinced of the defendant's guilt after full consideration of the evidence, precluded a reasonable likelihood that the jurors understood the reference to moral certainty "to allow conviction on factors other than the government's proof," according to the Court. Id. 511 U.S. at ___, 114 S.Ct. at 1251, 127 L.Ed.2d at 600.
Thus, the United States Supreme Court concluded that instructions in the Nebraska and California cases under consideration in Victor, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury. Since there was no reasonable likelihood that the instructions were applied in a way that violated the Constitution, the Court affirmed the juries' findings of guilt in both cases.
The charge in the Smith case lies somewhere between that given in Cage and that found in Victor. Like Victor and Cage, Smith does include reference to "moral certainty" and "substantial doubt." The same reasons given in Victor why those terms were not impermissible are applicable here and are discussed in the two succeeding paragraphs.
The jurors in the Smith trial were told that a reasonable doubt was "one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt." In Victor, the Court concluded that by linking the phrases "moral certainty" and "abiding conviction" jurors were less likely to misunderstand the meaning and should, in fact, be impressed with the need to subjectively determine with near certainty the defendant's guilt. In addition, like the California charge in Victor, which also contained the term "moral certainty" in describing "reasonable doubt," the jurors in Smith's trial were instructed in the next sentence of the charge that unsatisfactory evidence, on even a single point necessary to constitute the defendant's guilt, should give rise to such a reasonable doubt that would justify a verdict of not guilty. Therefore, in the view of the Supreme Court, the term "moral certainty" would not likely be disassociated from the evidence in the case.
Regarding "substantial doubt," the Victor Court concluded that such expression was acceptable because it simply informed the jury that a reasonable doubt is something more than a speculative one. That Court was of the view that the modifier "substantial" expressed an alternative definition of the word, that is, "not [just] seeming or imaginary," as opposed to "specified to a large degree."
In addition, however, to the "moral certainty" and "substantial doubt" language, the Smith charge contains the term "grave uncertainty," which appears in Cage but not in Victor. Nonetheless, as used in Smith and in the context of the entire charge with its qualifying language, and notwithstanding that there appears elsewhere the words "real, tangible, substantial basis" and "substantial doubt," the term "grave uncertainty" does not suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard.
As previously noted, the Cage Court focused on the presence of the suspect terms in the instruction whereas the Victor Court considered the relationship of the terms to the instruction as a whole to determine whether the jurors were reasonably likely to have misapplied the instruction. In stating that:
[t]his doubt must be a reasonable one, that is founded upon a real, tangible, substantial *406 basis and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt.
If after giving a fair and impartial consideration to all the facts in the case you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.
A reasonable doubt is not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable person would seriously entertain. It is a serious doubt for which you could give a good reason[,]
the Smith court used the words in the sense of the existence rather than the magnitude or degree of the doubt necessary to acquit. Thus, the Supreme Court's discussion of the interpretation of the term "substantial doubt" is equally applicable to the term "grave uncertainty" (as part of the phrase "a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence). Contrasted with "mere caprice, fancy or conjecture," "grave uncertainty" in this context suggests to the jury that a reasonable doubt is something more than a speculative one. Furthermore, the Cage concerns that the jury would interpret the terms "substantial doubt" and "grave uncertainty" together to produce an overstatement of the doubt necessary to acquit is alleviated by their separation in the instruction here.
Applying Victor to the Smith instruction that is, considering the instruction as a whole rather than isolating the suspect terms, noting that there are distinctions between the Cage instruction and the instruction in this case, and, more importantly than any of the foregoing, utilizing Victor's reaffirmation of the Boyde reasonable likelihood standard of reviewwe find that the instruction in the Smith case is not constitutionally deficient. And we so find irrespective of whether the Smith charge, dissimilar from Cage in some particulars, is closer to the Cage than to the Victor charge. There is not a reasonable likelihood that the jury understood the Smith instructions to allow conviction based on proof insufficient to meet the Winship standard. Therefore, we need not address whether the failure to object contemporaneously to an erroneous charge would bar relief.

II.
It is also contended that the defendant was denied a fair trial when the jury was sequestered for ten hours prior to trial and then required to hear evidence and deliberate until the early hours of the next morning. When the complaint was raised at the initial docketing of the case, it prompted this Court to remand the matter for an evidentiary hearing. Testimony of most of the jurors was heard by the trial court in 1980, and testimony of the original trial counsel was heard in 1987. Neither the jurors nor trial counsel admitted to being fatigued to the point of not being able to function properly during the proceedings. Furthermore, the trial transcript reflects that each side was given all the time needed to present its case and that counsel did a creditable job with the evidence at hand. Since the defendant is unable to demonstrate that the conduct of the proceedings rendered the trial fundamentally unfair, his claim lacks merit on this showing.

DECREE
Accordingly, we affirm the defendant's second degree murder conviction, and the life sentence imposed by the district court.
AFFIRMED.
ORTIQUE, J., dissents with reasons.
ORTIQUE, Justice, dissenting.
The majority, purporting to employ the analysis set forth in Victor v. Nebraska, 511 U.S. ___, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), finds that the reasonable doubt charge used in this case passes constitutional muster. I disagree and respectfully dissent.
*407 The U.S. Supreme Court upheld the two reasonable doubt instructions at issue in Victor, supra, by distinguishing those instructions from those held to be deficient in both Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) and Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Supreme Court upheld the charges in Victor, finding that the charges taken as a whole provided sufficient explanatory language to prevent a reasonable juror from concluding that a defendant may be convicted under a standard of proof lower than the constitutionally mandated standard of beyond a reasonable doubt.
The instruction which in part forms the basis of Wilfred Smith's appeal is clearly not permissible under the Victor analysis for several reasons. First, the Smith instruction includes the term "grave uncertainty," while neither of the instructions reviewed in Victor include this term. The evaluation of this term should rest, therefore, upon the holdings in those cases wherein the term was before the United States Supreme Court. Thus, we must look to Cage, supra, and Sullivan, supra. In Cage, the Supreme Court found that the word "grave" as commonly understood, suggests a higher degree of doubt than is required for acquittal under the reasonable doubt standard. Because the Supreme Court did not expressly overrule Cage, in its Victor decision, its finding with respect to the use of this term in jury instructions continues to control to the extent that the term "grave uncertainty" is included therein. Therefore, the Smith instruction is constitutionally deficient because it includes this term.
Second, in Cage, the Supreme Court found that the term "moral certainty," is contrary to the beyond a reasonable doubt requirement articulated in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), because it provided insufficient context to lend meaning to the phrase. See Victor, supra, 511 U.S. at ___, 114 S.Ct. at 1250. The Sandoval instruction,[1] one of the instructions reviewed in Victor, explicitly told jurors that their conclusion must be based upon the evidence. In tracing the historical development of the use of the term "moral certainty," the Court in Victor pointed out that the meaning of the term has changed over the last century. It has become such a nebulous concept that it is imperative that the term be given a meaning to which modern jurors can relate. The Victor Court opined that connecting the term "moral certainty" to the evidence was one method of giving the term meaning. The problem with the majority opinion is that it fails to recognize that the Victor Court opined that an instruction must make the necessary connection between the evidence and the meaning of "moral certainty." The Smith instruction states: "[i]f after giving a fair and impartial consideration to all the facts in the case ..." (emphasis added). Fact is defined in Webster's Ninth New Collegiate Dictionary as "an actual occurrence, an event." Evidence is defined as "something legally submitted to a tribunal to ascertain the truth of a matter." Admonishing a jury to consider the facts fairly and impartially rather than the evidence is likely to confuse the jury and cause it to focus on facts and give less attention to evidence. Neither of the two instructions at issue in Victor contain a similar statement; rather, the Victor instructions admonish the jury to consider the evidence.
Clearly, strongly and uncompromisingly directing the jury's focus to the evidence is of utmost importance. The Court in Victor, opined that in several portions of the Sandoval instruction it was reiterated that the jury must focus on the evidence, thus eliminating the likelihood that a jury could have understood "moral certainty" to be disassociated from the evidence in the case. See also Victor, 511 U.S. at ___, 114 S.Ct. at 1252, Ginsberg, J., concurring in part and concurring in the judgment.
The instructions in Victor were upheld in part because they included the admonition that "[i]n determining any issues of fact presented *408 in this case, you should be governed solely by the evidence introduced before you." (emphasis added). A similar relationship between facts and evidence is lacking in the Smith instruction. This deficiency is further compounded by use of the phrase "unsatisfactory character of the evidence." The Smith instruction fails to explain this phrase contextually or otherwise, thus the phrase is not given meaning in the legal sense which reasonable persons of ordinary intelligence would understand.[2] A reasonable doubt instruction should clearly state, as in the instructions reviewed in Victor, that the evidence to be considered must be the evidence which has been properly introduced and submitted to the jury.
Given the number of persons who serve on juries who may lack formal education beyond a primary level and frequently lack the sophistication to weigh evidence without proper instruction, I believe the majority errs in concluding that there is "no reasonable likelihood that the jury rendered its verdict on a standard of proof less than beyond a reasonable doubt." Contrary to the majority view, in my view, there is every reasonable likelihood that the jury rendered its verdict on a standard of proof less than beyond a reasonable doubt, unless the jury was properly instructed.
Clearly, a thorough application of the Victor analysis, rather than an application which focuses upon the words without giving sufficient attention to their contextual presentation, and the failure to follow Cage and Sullivan where Victor is silent, leads to a logical conclusion that the Smith instruction is constitutionally deficient. Therefore, the majority errs in both its rationale as well as its conclusion.
In my view, the verdict in this case must be reversed regardless of whether defendant lodged a contemporaneous objection. See Sullivan v. Louisiana, supra. Smith's application was pending in this court at the time Cage, supra and Sullivan, supra were decided. Consequently, Smith is entitled to the benefit of those decisions. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). I would reverse the conviction of defendant Wilfred Smith and order a new trial.
NOTES
[1] Kimball, J., not on panel. Rule IV, Part 2, § 3.

Judge Charles A. Marvin, Chief Judge, Court of Appeal, Second Circuit, sitting in place of Justice James L. Dennis.
[2] Following trial in July of 1979, Smith retained private counsel for the appeal. After the case was docketed in this Court, a preliminary examination of the principal complaint, that the defendant had been unable to obtain a fair trial from an exhausted jury, prompted this Court to remand the matter for an evidentiary hearing. On remand, there were initially two post-trial hearings. At the end of the second proceeding, the trial judge denied the defense motion for a new trial. Several months later and before obtaining transcripts of the hearings or taking any further steps in the appeal, defendant's first appellate counsel was shot and killed by a disgruntled client. In September of 1981, defendant filed a pro se pleading in the district court to request the appointment of counsel and copies of the evidentiary hearing transcripts. When the defendant subsequently sought the intervention of this Court in the matter, we were advised that an Indigent Defender had been appointed to represent him. Three years after the appointment, the records of the evidentiary hearings had not been lodged in this Court. Consequently, on September 20, 1984, in response to the defendant's petition, this Court ordered the trial judge to furnish counsel for defendant with a complete copy of the evidentiary hearing within fourteen days. In early 1985, the attorney received the previously unavailable transcript and then withdrew. Defendant again retained private counsel to resume the appeal in October of 1986. Counsel conducted the final segment of the post-trial evidentiary hearings, the examination of the trial counsel with regard to the circumstances surrounding the trial and its overall fairness, on June 19, 1987. This private counsel withdrew sometime in 1988 without ever obtaining a transcript of that hearing. All transcripts were finally lodged in this Court by October of 1991 and the Indigent Defender Office was again appointed to handle the appeal. In April of 1992, that attorney filed an "errors-patent" brief together with a motion to withdraw. Subsequently, the defendant filed a number of pro se pleadings, including a supplemental brief in which he pointed out that, since he and John Sullivan had both been tried before the same judge, the same reasonable doubt jury charge, found to constitute structural error in Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), was likely given. The transcribed jury charges were docketed into the appeal in October, 1993, and, on November 15, 1993, this Court granted the request of the attorney from the Indigent Defender Office to withdraw, and simultaneously appointed the Tulane Law Clinic to represent defendant.
[3] Before July 1, 1982, this Court had original appellate jurisdiction over felony convictions. La. Const. art. V, § 5(D).
[4] That instruction to the jury in Cage provided as follows:

Ladies and gentlemen, the Defendant is presumed to be innocent until he is proven guilty beyond a reasonable doubt. This means that the Defendant is not required to prove his innocence, but may rest upon the presumption in his favor until it is overcome by affirmative proof. The burden therefore is on the State to establish the guilt of the accused to your satisfaction and beyond a reasonable doubt. It is your duty as jurors to consider all the evidence and then apply the law as given to you by the court. If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty. If after giving a fair and impartial consideration to all the facts in the case you find the evidence unsatisfactory or lacking of one [sic] any single point indispensably necessary to constitute the defendant's guilt, this would justify you in rendering a verdict of not guilty.
[5] Less than two years after the United States Supreme Court unanimously denied Cage's application for certiorari to review this Court's determination that his reasonable doubt instruction was subject to harmless-error analysis and was, in fact, harmless, that Court granted John Sullivan's application for certiorari on the same question involving a similar jury charge and held that a harmless-error analysis could not be applied. Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Although the Supreme Court had vindicated his contention that the charge on reasonable doubt used in his conviction was deficient, Cage's conviction and sentence nonetheless became final before Sullivan was decided. Responsive to a recently filed out of time rehearing application, this Court has exercised its plenary supervisory authority and transferred that application to the district court with instructions to treat it as an application for post conviction relief. State v. Cage, 631 So.2d 1148 (La.1994).
[6] In dissent, Justice Blackmun, joined by Justice Souter, noted that "[t]here is no meaningful difference between the jury instruction delivered at Victor's trial and the jury instruction issued in Cage, save the fact that the jury instruction in Victor's case did not contain the two words `grave uncertainty.'" 511 U.S. at ___, 114 S.Ct. at 1254, 127 L.Ed.2d at 604.
[7] In fact, a portion of the Cage instruction, unrecited in the United States Supreme Court's per curiam, correctly conveys to the jury its duty in this regard. That portion provides as follows:

Ladies and Gentlemen, the Defendant is presumed to be innocent until he is proven guilty beyond a reasonable doubt. This means that the Defendant is not required to prove his innocence, but may rest upon the presumption in his favor until it is overcome by affirmative proof. The burden therefore is on the State to establish the guilt of the accused to your satisfaction and beyond a reasonable doubt. It is your duty as jurors to consider all the evidence and then apply the law as given to you by the Court.
[8] The following instruction was given to the jury in Sandoval's case:

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. The presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.
Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.
[9] After the judge in Victor instructed the jury that "the burden is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged," he read the following instruction:

"Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, to a moral certainty, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the strong probabilities of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an actual and substantial doubt arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the state, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.
[1] The Sandoval instruction provides in pertinent part:

"a reasonable doubt is "that state of the case which, after the entire comparison and consideration of the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."
[2] Some lay persons may wonder how evidence might be unsatisfactory or whether this refers to evidence which a jury may have heard but which the court orders the jury to disregard.