839 So.2d 1258 (2003)
STATE of Louisiana, Appellee,
v.
Lonzette K. GADDIS, Appellant.
No. 36,661-KA.
Court of Appeal of Louisiana, Second Circuit.
March 14, 2003.
*1261 Cary J. Ellis, III, Louisiana Appellate Project, for Appellant.
*1262 Lonzette K. Gaddis, Pro Se.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Dale G. Cox, Assistant District Attorney, for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
CARAWAY, J.
By grand jury indictment, Lonzette K. Gaddis ("Gaddis") was originally charged with second degree murder and convicted of the responsive verdict of manslaughter. Gaddis received a life sentence after his adjudication as a fourth-felony offender and now appeals his conviction and sentence.[1] We affirm.

Facts
In the early morning hours of June 11, 2000, Erica Walker ("Walker") drove to a vacant lot in Shreveport known as "the slab." The slab is a neighborhood haunt known for drinking, gambling, and drug activity. A witness saw Walker exit her vehicle and approach Gaddis. An argument between the two ensued, as well as the exchange of unknown items. When Walker sat down on a bucket, Gaddis pointed a gun to her face and fired, inflicting fatal injuries to her neck and throat.[2] Cash and cocaine were found on the victim. Gaddis fled the scene and threw his gun into a lake. Thereafter, he and a cousin drove to Gaddis's father's home where they obtained $30. Gaddis then traveled to Joaquin, Texas, where he was apprehended by police after an attempted flight into nearby woods. Upon his arrest, Gaddis waived extradition and was transferred to Louisiana for trial. During transport, he stated that Walker had a gun and had brought this upon herself.

Sufficiency of Evidence
On appeal, Gaddis first contends that the evidence was insufficient to convict him because the state failed to prove that he possessed the specific intent to kill or inflict great bodily harm and failed to exclude the reasonable hypothesis that he acted in self-defense.
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
*1263 A justifiable homicide is a homicide committed in self-defense by one who reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger. La. R.S. 14:20. A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw. La. R.S. 14:21.
In pertinent part, second degree murder is the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. The offense of manslaughter is defined as a homicide that would be second degree murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Specifically, for the purpose of this offense, the crime of manslaughter includes a homicide committed without any intent to cause death or great bodily harm when the offender is engaged in the perpetration of felonies not enumerated in La R.S. 14:30.1 or any intentional misdemeanor directly affecting the person. La. R.S. 14:31.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Hudson, 33,357 (La.App.2d Cir.5/10/00), 760 So.2d 591.
The issue in this case is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that Gaddis did not kill Walker in self-defense. Gaddis concedes he shot Walker, but contends that he acted in self defense. At trial, he testified that it was Walker who came up to him with a gun and demanded that he pay her the money owed to her. Gaddis stated that he gave her a twenty, although he only owed her ten dollars. He claimed that after he gave her the twenty, Walker sat down and put down the gun. However, as Gaddis approached her to get his change, she re-armed herself and came toward him. It was then that Gaddis stated he shot Walker with his gun because he believed she would kill him. Thereafter, Gaddis fled the scene, called 911, and threw his gun into a local lake. He could not explain the absence of Walker's gun from the crime scene but surmised that someone probably stole it after the incident. He further explained that he fled from the police out of fear.
The eyewitness testimony of Jerry Jones ("Jones") presented a different version of the events. Jones testified that he saw Walker and Gaddis exchange something and then begin a heated argument. When Jones attempted to stop the fight, he claimed that Gaddis pushed him into a fence. By that time, Jones saw Gaddis holding a gun in Walker's face; she was seated and he was standing. After approximately thirty to forty seconds, Jones stated that Gaddis pulled the trigger, shooting Walker in the throat. Jones testified that Walker was unarmed and never threatened Gaddis.
Dr. Steven Cogswell, the forensic pathologist who performed Walker's autopsy, testified that in his opinion the gun was fired from a distance of twelve to twenty-four inches. He stated that the bullet traveled at a forty-five degree angle *1264 downward which was consistent with the victim being seated and the perpetrator standing at the time of the shooting.
From this proof, the jury convicted Gaddis of manslaughter, obviously rejecting his self-defense claim. The law is clear that absent internal contradictions or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201; State v. Hopkins, 34,119 (La.App.2d Cir.12/20/00), 774 So.2d 1178. Obviously, the jury in this case accepted Jones's testimony and rejected Gaddis's version of the events. Moreover, the medical testimony corroborated this description of the shooting and contradicted Gaddis's claim that Walker was coming toward Gaddis with a gun. Further, the absence of a second gun at the crime scene discredits Gaddis's claim that Walker was also armed. Under these circumstances, we find the jury's credibility determination reasonably supported by the record. When credited by the jury, Jones's eyewitness testimony is sufficient to prove beyond a reasonable doubt that Gaddis did not act in self-defense. These facts also support the manslaughter verdict. We, therefore, reject this argument.

Jury Instructions
In his first pro se argument, Gaddis contends that he was denied both effective assistance of counsel and due process based upon unconstitutional charges which were submitted to the jury. Specifically, Gaddis argues that the jury instructions defining the phrase "reasonable doubt" and instructing the jury on the issue of self defense effectively shifted the burden of proof to him and relieved the state of its burden of proof. Gaddis also argues that his counsel failed to object to the flawed instructions.
Notably, the record before us clearly shows that Gaddis's counsel did not make any objection to the jury instructions during trial. Of course, the general law is that an error may not be asserted on appeal unless a timely contemporaneous objection is made. La.C.Cr.P. art. 841. Nevertheless, the jurisprudence has carved out an exception to this rule where such alleged trial errors raise overriding due process considerations. State v. Lowery, 33,905 (La.App.2d Cir.2/28/01), 781 So.2d 713, writ denied, XXXX-XXXX (La.2/22/02), 809 So.2d 978.
Reasonable Doubt Instruction
The specific reasonable doubt instruction at issue and the relevant portions thereof which Gaddis contends is unconstitutional reads as follows:
Proof beyond a reasonable doubt is a phrase that is almost self-explanatory. Reasonable doubt does not mean all possible doubt, but means doubt based upon a reason. If, after you have considered the evidence and the law applicable, there is doubt in your mind as to the guilt of the accused, which doubt is based upon a reason, or for which doubt you can express a reason, then the defendant is not guilty. However, "proof beyond a reasonable doubt" does not mean proof to an absolute certainty.
Gaddis relies on the cases of Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) and Humphrey v. Cain, 138 F.3d 552 (5th Cir.1998) to support his claim that the above instruction violated his due process rights. In Cage, the U.S. Supreme Court condemned the use, in a reasonable doubt instruction, of *1265 the phrases "grave uncertainty," "actual substantial doubt," and "moral certainty." In Humphrey, the Fifth Circuit Court of Appeals also condemned the use of the phrases "grave uncertainty," "moral uncertainty," "actual and substantial doubt" and "serious doubt for which you could give reason" in jury charges relating to reasonable doubt. Both courts held that such definitions diminished the state's burden of proof, in violation of the Due Process Clause.
We first observe that in this case, none of these specific definitions are utilized. Moreover, the Louisiana Supreme Court has held that these cases, while persuasive authority, are not binding on the courts of this state. State v. Penns, 99-2916 (La.12/20/99), 758 So.2d 776, cert denied, 529 U.S. 1134, 120 S.Ct. 2014, 146 L.Ed.2d 963 (2000). Rather, that court has determined that its holdings in State v. Smith, 91-0749 (La.5/23/94), 637 So.2d 398, cert. denied, 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994) and State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998) bind the courts of this state in reviewing claims regarding erroneous instructions on reasonable doubt.
Smith considered the jury instruction as a whole, rather than isolating certain terms,[3] and held that an instruction equating a reasonable doubt with "a serious doubt for which you could give a good reason" was not constitutionally infirm. Relying on the Smith holding, Williams likewise held that an instruction defining reasonable doubt as being "based on reason and common sense ..." did not violate the constitution.
In this case, we see little distinction between the subject instruction and that discussed in Williams. Each simply equates a reasonable doubt with a doubt for which a juror could give a good reason. Based upon the holding of Williams, and, after viewing the jury instructions as a whole in accordance with Smith, we cannot say that this instruction is constitutionally infirm.
Self-Defense Instruction
The self-defense language at issue was included in the jury instruction on justifiable homicide which contains the following language:
The burden of proving self defense is not on the defendant. The State must prove beyond a reasonable doubt that the killing was not in self defense. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self defense.

Gaddis argues that inclusion of the phrase, "viewing the evidence in the light most favorable to the prosecution," confused the jury and "required" it to return a guilty verdict if the state presented any evidence whatsoever to prove its case. Since Gaddis's trial counsel made no timely objection to the jury instruction, Gaddis argues that the patent prejudice of this instruction establishes his claim for ineffective assistance of counsel.
The inclusion of the "light most favorable to the prosecution" phrase in the charge to the jury is error. The language *1266 provides the appellate standard of review which gives deference to the trier of fact's determination of the facts of the conviction. This was explained in Jackson v. Virginia, supra, as follows:
This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.
443 U.S. at 319, 99 S.Ct. 2781. In this case, the conflict in the evidence arose in the competing accounts of the shooting given by the defendant and Jones. Gaddis's claim of self-defense turned on this credibility issue. Therefore, we must consider whether this error requires reversal of the conviction.
A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139; State v. Jasper, 28,187 (La.App.2d Cir.06/26/96), 677 So.2d 553, writ denied, 96-1897 (La.2/21/97), 688 So.2d 521. An erroneous instruction is subject to harmless error review. State v. Eskano, 2000-101 (La. App. 5th Cir.1/30/01), 779 So.2d 148. The question becomes, whether it appears beyond a reasonable doubt, that the erroneous instruction did not contribute to the jury's finding of guilt or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. State v. Smith, 600 So.2d 1319 (La.1992). Stated another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely unattributable to the jury charge error. State v. Eskano, supra.
As conceded even by Gaddis, the justifiable homicide instruction also unequivocally informs the jury that the burden of proving self defense is not on the defendant. We will agree, however, that confusion regarding the correct standard of proof can result when consideration is given solely to the erroneous language. However, considered in the context of the entire charge, as well as the evidence of guilt presented at trial, we are sufficiently convinced that no reversible prejudice resulted.
Most significantly, the issue of the witness's credibility was presented to the jury in the following portion of the jury charge:
It is your duty to determine weight and credibility of the evidence. You may take into consideration the probability or improbability of the statements of the witnesses, their opportunities for knowledge of the facts to which they testify, their reliability in noting and remembering facts, their demeanor on the stand, the interest or lack of interest they have shown in the case, and every circumstance surrounding the giving of their testimony which may aid you in weighing their statements. If you believe that any witness in this case has willfully and deliberately testified falsely to any material fact for the purpose of deceiving you, then you are justified in disregarding the entire testimony of such witnesses as proving nothing and as not worthy of belief. You have the right to accept as true or reject as false the *1267 testimony of any witness, in whole or in part, as you are impressed with his truthfulness.
With each witness's testimony directly contradicting the other on the issue of self-defense, the jury was therefore instructed that the testimony of either Jones or Gaddis could be disregarded in favor of the version of the shooting presented by the other.
The record before us shows that in addition to the justifiable homicide charge, the jury was given a totally separate self-defense instruction which excluded the "light most favorable" language and reiterated the correct standard of proof, i.e., that the burden of proving self-defense was on the state. Additionally, the jury was clearly and correctly instructed at least twice regarding Gaddis's presumed innocence, until "each element of the crime necessary to constitute guilt is proven beyond a reasonable doubt."
When we compare the improper language of the jury charge with the specific charge regarding the conflicting statements of witnesses and the jury's right to determine credibility, we do not find that the guilty verdict was attributable to the erroneous jury charge. On this basis, we find no merit in Gaddis's contention. Nor would Gaddis's claims of ineffective counsel for failure to object to these instructions have merit on these grounds.

Failure to Consider Pro Se Motions
In his next assignment of error, Gaddis contends the trial court erred in neglecting to rule on three pro se motions. Gaddis filed two pro se motions to appoint new counsel on August 22 and September 23, 2001. He also sought funds for a private investigator in a pro se motion filed on September 23, 2001.
Gaddis correctly contends that the trial court never ruled on any of these pre-trial motions. State v. Melon, 95-2209 (La.9/22/95), 660 So.2d 466. However, because the record shows that Gaddis permitted the trial to proceed without raising the issue of the lack of a ruling on the pending motions, they are waived. State v. Jackson, 99-401 (La.App. 5th Cir.10/13/99), 746 So.2d 698; State v. Price, 96-680 (La.App. 5th Cir.2/25/97), 690 So.2d 191. Moreover, on appeal, Gaddis has failed to allege or demonstrate prejudice in the failure of the trial court to rule on these motions. La. C. Cr. P. art. 921. For these reasons, we find no merit to Gaddis's argument.

Erroneous Rulings on Pro Se Motions
In this assignment of error, Gaddis contends that the trial court erred in failing to grant three supplemental motions for new trial, a supplemental motion for appointment of counsel and a motion to place a material witness under bond. The record shows that the trial court heard, considered and denied Gaddis's motions on January 22, 2002.
Gaddis grounded his supplemental motion for appointment of new counsel on a claim of ineffective assistance of counsel. The trial court denied the motion on the basis that Gaddis had included insufficient allegations to support the claim. We agree. A defendant making a claim for ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123. We have reviewed Gaddis's motion and find that the allegations contained therein can be appropriately classified as general and conclusory charges. Therefore, with insufficient *1268 grounds to support the motion, we find that the trial court correctly ruled.
In his pro se brief, Gaddis also contests the trial court's denial of his Motion to Place Material Witness Under Bond. In the motion, Gaddis sought to have Gwen Hopson, an alleged witness to the incident, arrested on a material witness bond in accordance with La. R.S. 15:257.
The provisions of La. R.S. 15:257 allow a judge, upon motion of a defendant, when supported by his affidavit, to issue a warrant for the arrest of a witness who is essential to the prosecution or defense, to secure the testimony of that witness. The mover is required to show that there are good grounds to fear that the witness may depart or be taken from the jurisdiction of the court. In this case, the trial court denied the motion on the grounds that the motion was not properly before the court and failed to adequately provide the location of the witness. We agree. Not only did Gaddis fail to include an affidavit as required by La. R.S. 15:257, but he also failed to allege that the prospective witness would depart or be taken from the jurisdiction of the court. For these reasons, the trial court correctly denied this motion.
In his three motions for new trial, Gaddis requested a new trial based upon his counsel's alleged ineffectiveness, the lack of credibility of witness Jerry Jones, and the erroneous admission of other crimes evidence. The trial court denied these motions, finding that they did not contain information sufficient to warrant a new trial. On appeal, Gaddis makes a specific argument relating only to the first two, i.e., ineffective assistance of counsel and the credibility of Jerry Jones.
As a general rule, a claim of ineffective assistance of counsel should be raised in an application for post-conviction relief in the trial court so that a full evidentiary hearing may be had. State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. However, a new trial motion is also a proper vehicle to raise such claims. Id. As in the case of his motion to appoint new counsel, here Gaddis makes conclusory allegations. Many of the claims involve the alleged failure of the trial court to provide Gaddis funds for a private investigator. Nevertheless, because the record shows that Gaddis was provided with a private investigator through the public defender's office, he cannot show prejudice. The remaining claims concern counsel's alleged failure to confer with him and interview witnesses. Again, Gaddis has neither pointed to specific instances supporting his claim nor showed that these errors established actual prejudice, i.e., that but for counsel's actions, there is a reasonable probability that the outcome of the trial would have been different. Id. Therefore, we can find no error in the trial court's denial of Gaddis's motion for new trial because of ineffective assistance of counsel.
In a second supplemental motion for new trial, Gaddis contends that Jones's testimony "should not have been worthy of belief," due to his admission at trial that he had been drinking at the time of the incident and because he changed his story throughout the investigation and trial proceedings. Gaddis also seeks a new trial on the basis of newly discovered evidence, namely, the testimony of another witness, Gwen Hopson, which he contends would have raised a reasonable doubt in the jurors' minds, thus changing the verdict. Where the issue on a motion for new *1269 trial primarily involves a question of credibility, the trier of fact is better situated to make such determinations. State v. Tyler, 342 So.2d 574 (La.1977), cert denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227; State v. Cherry, 32,141 (La.App.2d Cir.9/22/99), 752 So.2d 894, writ denied, XXXX-XXXX (La.6/30/00), 765 So.2d 1064. As a legal proposition, a new trial should not be granted on the ground that the newly discovered evidence destroys the credibility of the State's witness. Id. Additionally, in a motion for new trial based upon newly discovered evidence, the defendant has the burden of showing that the evidence was discovered after trial, is material to the trial, would have produced a different verdict, and the failure to discover it was not caused by lack of diligence. State v. Lanham, 31,791 (La.App.2d Cir.3/31/99), 731 So.2d 936, writ denied, 99-1320 (La.1/14/00), 753 So.2d 207.
In this case, the record clearly shows that the jury heard evidence regarding Jones's possible intoxication, i.e., he admitted drinking up to ten beers. Additionally, Gaddis's attorney pointed this fact out in closing argument. Therefore, the jury's credibility determination regarding this point was fully informed. On this basis, a new trial is not warranted. Likewise, it is clear that Gaddis knew of Gwen Hopson's testimony prior to trial. Moreover, her account of the incident, as reported by the investigating police, not only corroborated Jones's testimony generally but failed to exculpate Gaddis in the way that he claims. Therefore, Gaddis has failed to show how Hopson's testimony would have either changed the result of the trial or qualifies as newly discovered evidence, for which a new trial is appropriate.

Responsive Verdicts
In this assignment of error, Gaddis contends that the trial court never ruled on his Motion to Exclude Responsive Verdicts, thereby erroneously charging the jury with manslaughter when there was insufficient evidence with which to support a manslaughter verdict. We have, of course, already determined that the evidence was sufficient to support the manslaughter verdict. Therefore, this portion of the argument is without merit. Moreover, although Gaddis failed to provide a transcript of the argument on this motion, the minute entry for October 30, 2001, shows that the case was "taken up on Motion to Exclude Verdict filed November 7, 2000, argued, submitted and denied." Therefore, Gaddis's claim that the trial court failed to rule on the motion is also rejected.

Habitual Offender Adjudication/Sentencing
In this assignment of error, Gaddis contends that the trial court erred in adjudicating him a habitual offender and in sentencing him to life imprisonment. Specifically, Gaddis contends that the state failed to prove the ten-year cleansing period had not elapsed for any of the crimes used as predicate offenses.[4]
On October 25, 2001, the state filed a habitual offender bill of information charging *1270 Gaddis as a fourth felony offender, based upon the present conviction and his previous guilty pleas for simple burglary of an inhabited dwelling on March 5, 1990, distribution of a schedule II controlled dangerous substance, on April 12, 1993, and unauthorized entry of an inhabited dwelling on February 18, 1997. No written objection to the proceedings was filed in accordance with La. R.S. 15:529.1(D)(1)(b). Of course, any challenge to the previous conviction or adjudication which is not made before the sentence is imposed may not thereafter be raised to attack the sentence and is not preserved for appellate review. La. R.S. 15:529.1(D)(1)(b); State v. Henry, 36,217 (La.App.2d Cir.8/14/02), 823 So.2d 1064; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150. Therefore, Gaddis is precluded from raising as an issue the propriety of the subject cleansing period.
Nor do we find error in the sentence imposed. The definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). Pursuant to this function, the legislature enacted the habitual offender statute, which has been held on numerous occasions to be constitutional. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed to be constitutional. The determination of an appropriate minimum sentence by the legislature should be afforded great deference by the judiciary. While the judiciary is not without authority to declare a mandatory minimum sentence under the habitual offender law excessive under the facts of a particular case, this should be done only in those rare instances where there is clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, supra.
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that:
[He] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. at 676. Additionally, in determining whether Gaddis has met this burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
In compliance with La. R.S. 15:529.1(A)(1)(c)(ii), as it read on the date of Gaddis's offense, and which imposed a statutory minimum life sentence for a fourth felony offender whose fourth or previous felonies were defined as a crime of violence under La. R.S. 14:2(13), the court sentenced Gaddis to life imprisonment without benefit of parole, probation or suspension of sentence. Because manslaughter is a crime of violence, the sentence is presumed to be constitutional. On appeal, Gaddis merely claims that the trial court erred in imposing this sentence and offers no evidence showing an unusual circumstance or that he is the "exceptional" defendant *1271 for which downward departure from the mandatory minimum sentence is required. Under these circumstances, we will not disturb the imposed sentence.

Res Gestae
In his final assignment of error, Gaddis argues that the trial court erred in admitting other crimes evidence at trial. The record shows that this argument was also presented in support of Gaddis's supplemental motion for new trial.
On September 5, 2001, the state notified Gaddis of its intent to use evidence of other crimes at trial. Specifically, the state sought to introduce evidence that at the time of the shooting, Gaddis was probably engaged in a drug transaction based upon the fact that cocaine was discovered on the victim at the hospital. On September 19, 2001, a hearing was held on the admissibility of the evidence. Specifically relating to the other crimes evidence, the state presented the testimony of Officer Tom Oster ("Oster") who received cocaine and cash from a nurse at the hospital where the victim was taken; these items had been retrieved from the victim. Based upon his receipt of these items, at the hearing Oster stated his belief that a drug transaction transpired at the time of the homicide. After hearing this testimony, the trial court found it admissible as part of the res gestae.
Though generally inadmissible, evidence of other crimes, wrongs or acts may be introduced when it relates to conduct that forms an integral part of the act or transaction that it the subject of the present proceedings. La. C.E. art. 404(B)(1); State v. Coates, 27,287 (La. App.2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365. In such cases, the purpose served by the admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving the immediate context of happenings near in time and place. State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074. The test of integral act evidence is not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. State v. Colomb, supra.
We find no error in the trial court's classification of this evidence as res gestae, thereby allowing the state to utilize it in proof of its case. Clearly, the victim's possession of drugs after the incident was near in place and time to the event. Moreover, with eyewitness testimony suggesting an exchange occurred between the victim and Gaddis prior to the shooting, this evidence appropriately served to complete the story of the crime. Therefore, we can discern no error in its admission into evidence at trial or the trial court's denial of Gaddis's motion for new trial on these grounds.

Conclusion
For the foregoing reasons, we affirm Gaddis's conviction and sentence.
AFFIRMED.
NOTES
[1] On appeal, briefs have been submitted by Gaddis and his appellate counsel.
[2] Toxicology results showed that Walker had a blood alcohol level of 0.185 percent.
[3] Specifically in accordance with Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).
[4] In brief, Gaddis "adopts" all arguments made by his counsel at the multiple offender hearing, while making no argument in support of those claims. Of course, assignments which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978). Moreover, the only argument made by counsel concerning the propriety of using court minutes to prove the simple burglary of an inhabited dwelling conviction was correctly disposed of by the trial court pursuant to State v. Shelton, 621 So.2d 769 (La.1993).