935 So.2d 815 (2006)
STATE of Louisiana, Appellee
v.
Nathaniel T. KING, Appellant.
No. 41,084-KA.
Court of Appeal of Louisiana, Second Circuit.
June 30, 2006.
*818 Annette Roach, Lake Charles, for Appellant.
Nathaniel T. King, Pro Se.
Paul J. Carmouche, District Attorney, Laura O. Wingate, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
WILLIAMS, Judge.
The defendant, Nathaniel King, was initially indicted on a charge of first degree murder, a violation of LSA-R.S. 14:30. Subsequently, the defendant was charged by amended indictment with second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, defendant was found guilty of the responsive verdict of manslaughter. Defendant's motion for post-verdict judgment of acquittal was denied. The trial court adjudicated defendant a second felony offender and imposed a sentence of 65 years at hard labor to run concurrently with any other sentenced imposed. The defendant appeals his conviction and sentence. We affirm the conviction; however, we amend the sentence.

FACTS
On the morning of March 23, 2001, the body of the victim, Ted Ramsey, was found at his residence in Shreveport with a knife sticking out of his neck. There was a great deal of blood at the crime scene and the coroner determined that the victim had been stabbed and cut approximately 65 times. A pair of the victim's pants looked as though someone had gone through the pockets and police investigators later learned that the victim had been carrying a large sum of cash the night before. The police observed two distinct sets of shoe *819 prints at the scene and a blood trail leading from the apartment to the street, indicating to the police that the attacker also had been injured. The police also found at the scene a number of latex finger cots, which are used by employees of restaurants or banks to cover their fingers. The name of defendant's sister, Shawntell Cade, was the last to appear on the victim's telephone caller-ID machine.
Investigators learned that defendant had been treated the evening before at the Schumpert Medical Center emergency room for a stab wound to his right forearm. At the hospital, defendant told a police officer that he had been attacked by three unknown men in the Martin Luther King area. When authorities went to the defendant's residence to question him, they observed through a glass door bloody clothes and shoes, which appeared to match a shoe print found at the crime scene. The police obtained a search warrant and subsequently arrested defendant after receiving an anonymous tip that he was hiding at his aunt's residence.
When initially questioned, the defendant said that he and his sister had gone to visit Ramsey and that they all "smoked weed." Defendant claimed that during the visit the victim suddenly attacked him with a knife, that defendant then took the knife and stabbed the victim in self-defense. However, in his second statement, defendant said he rode with his sister to the victim's house so she could pick up some money and she told him to wait in the vehicle. Defendant stated that after waiting 20 minutes he went to the victim's door, saw his sister and the victim fighting, and that he was cut when he tried to stop them. The defendant said that when he left to go wait in the vehicle, his sister was still "tussling" with the victim.
The defendant was charged by grand jury indictment with first degree murder. On October 29, 2001, following a sanity commission hearing, the defendant was found incompetent to stand trial and was transferred to a treatment facility. Defendant was subsequently found competent to be tried and the state amended the indictment to second degree murder. After a jury trial, the defendant was found guilty of manslaughter. The trial court adjudicated defendant a second felony offender and sentenced him to serve 65 years at hard labor. Defendant appeals his conviction and sentence.

DISCUSSION
The defendant contends the evidence was insufficient to support the conviction of manslaughter. Defendant argues that the state failed to prove beyond a reasonable doubt that he did not act in self-defense because his two versions of what occurred were not totally inconsistent and set forth a reasonable hypothesis of innocence.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
*820 Under the Jackson standard of appellate review for a sufficiency of the evidence claim, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Bosley, supra. This standard of review, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Both of defendant's statements place him and his sister, Shawntell Cade, in the victim's residence on the night he was killed. The physical evidence shows that the defendant's running shoes left identifiable bloody prints at the crime scene. A detective testified that defendant's larger shoe prints were found in the living room where the victim was attacked and that smaller shoe prints were left in the kitchen. It was established that the defendant's sister was approximately five feet tall. Thus, the jury could reasonably believe that the defendant, and not his sister, was the person who repeatedly stabbed the victim.
The physical evidence showed that the victim had sustained 65 stab and cut wounds and that the fatal knife wound punctured his carotid artery and jugular vein. The coroner testified that another stab wound in the victim's abdomen caused hemorrhaging and would also have been fatal. In particularly damaging testimony, the coroner reported that the wounds across the victim's palm and fingers showed that he had held his hands in a defensive posture. The jury could reasonably conclude from this evidence that the killing was not in self-defense and that defendant was the attacker.
Despite defendant's claim that his two statements to police were not totally inconsistent, the different versions of the killing were contradictory in significant respects. In the first version, defendant said he was *821 attacked by the victim, then took the knife and repeatedly stabbed the victim. However, in the second version, defendant said that he merely tried to stop the victim and his sister from fighting and did not stab the victim at all. In addition, evidence of defendant's guilt can be inferred from his statement at the emergency room on the night of the murder, when defendant lied about the circumstances of his knife wound and said nothing about stabbing the victim in self-defense. The defendant's fabrication demonstrates his consciousness of guilt and his attempt to prevent detection of the crime.
Thus, contrary to defendant's contention, the jury rationally could have found that the evidence presented, including the victim's wounds, the crime scene and defendant's own implausible statements about the killing, established beyond a reasonable doubt that the murder was not perpetrated in self-defense. The assignment of error lacks merit.

Motion to Suppress
The defendant contends the trial court erred in denying his motion to suppress the statements and physical evidence obtained from defendant by the state. Defendant argues that because of his limited mental ability, his use of prescription pain medication and his representation by counsel prior to the second statement to police, the prosecution failed to show that his waiver of rights was knowing and voluntary.
A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Normandin, 32,927 (La.App. 2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550. At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App. 2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288. The state has the burden to prove the admissibility of any evidence seized without a warrant. LSA-C.Cr.P. art. 703(D); State v. Traylor, 31,378 (La. App. 2d Cir.12/9/98), 723 So.2d 497.
The admissibility of a confession is a question for the trial judge, whose conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility should not be overturned on appeal unless they are not supported by the evidence. State v. Richardson, 33,272 (La.App. 2d Cir.11/1/00), 779 So.2d 771, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1151. We place great weight upon the trial court's factual determinations because of that court's opportunity to observe witnesses and assess credibility. State v. Roddy, supra.
Before introducing an inculpatory statement made in police custody, the state bears the heavy burden of establishing that the defendant received a Miranda warning and that the statement was freely and voluntarily made, and not the product of promises, threats or duress. LSA-C.Cr.P. art. 703; LSA-R.S. 15:451; State v. Johnson, 36,014 (La.App. 2d Cir.6/12/02), 821 So.2d 652. Any mental incapacity is an important factor to consider in deciding the voluntariness of a confession. The prosecution must introduce sufficient evidence to establish that under the totality of the circumstances, the defendant was aware of the nature of the right being abandoned. Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).
*822 At the hearing on the motion to suppress, Detective Tom Oster testified that he advised defendant of the right to remain silent and of his right to request and have an attorney present during the questioning. Oster stated that defendant indicated he understood these rights and signed a waiver of rights card before giving each of the taped statements. The rights cards and the audiotapes were introduced into evidence.
Detective Oster testified that police had executed a search warrant of defendant's residence and found a bag from the hospital pharmacy with a label for the pain medication Hydrocodone prescribed to defendant. Oster stated that while he did not ask defendant if he was on pain medication before questioning him, he had asked if defendant was under the influence of narcotics or alcohol. The detective testified that he "wouldn't interview him" if he thought defendant was under the influence of "something."
A review of the tape recording of the March 26, 2001 interview shows that defendant was expressly advised of his Miranda rights and was notified that he was under arrest for first degree murder. The defendant was able to give answers to the questions asked. After stating that he had stabbed the victim in self-defense, defendant was asked where he stabbed the victim and replied that it happened so fast he did not know where he stabbed the victim. He described the tennis shoes he had worn and gave the brand name. Defendant stated that he had put on the finger cots after stabbing the victim to clean up the "knife and stuff." He said that he had thrown away the shirt he had been wearing that evening and that he had not been staying at his residence because he was "scared" about what happened. When asked why he and his sister did not just leave when Ramsey attacked him, defendant answered that the victim had already stabbed him.
The defendant said he had smoked marijuana earlier that morning, but did not think he was "high" at the time. Defendant told the investigator that he graduated from high school in 1995 and that he was not working because of injuries resulting from a car accident.
At the time of the second interview on March 28, 2001, the defendant signed another waiver of rights card. In this statement he said that on the night of the stabbing he had asked his sister for a ride and she told him she needed to stop by the victim's residence first to get money. She said it would take about 10 minutes and defendant said he remained in the car for approximately 20 minutes, then he went to the door and saw his sister and the victim fighting. He said the victim stabbed him and he began bleeding. Defendant stated that before she dropped him off at the hospital, his sister said the victim had died.
A review of these audiotapes shows that the defendant was able to respond to the questions with detail. Further, he was able to estimate the length of time he said he spent in the vehicle waiting for his sister. The defendant's responses would not have indicated to the detective that defendant did not have the mental capacity to voluntarily give these statements.
We note that the issue of defendant's capacity to stand trial had been determined before the hearing on the motion to suppress was held in 2004. The trial court initially found defendant unable to stand trial at a sanity hearing held on October 29, 2001. No transcript of this first hearing is available. Subsequently, in April 2003, both doctors at a second sanity hearing stated that although defendant was mildly retarded, with an IQ score in the upper 60 to 70 range, he could assist in his defense.
*823 The Louisiana Supreme Court has stated that low intellect, moderate mental retardation or diminished mental capacity does not invariably vitiate capacity to make a free and voluntary statement or a knowing and intelligent Miranda waiver. State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044. Here, the evidence presented did not show that at the time the statements were recorded defendant was incapable of understanding and waiving his right to remain silent. In addition, the circumstances of the interviews support the detective's opinion that defendant was not impaired by the use of any medication. Thus, the record demonstrates that defendant's mental capacity did not preclude his ability to make a knowing waiver of his Miranda rights.
In his brief, defendant argues that because attorney Sheva Sims visited him in the jail prior to his second statement the detective's subsequent questioning violated his constitutional right to counsel. When counsel is requested, interrogation must cease; officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney. Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); State v. Williams, XXXX-XXXX (La.11/1/02), 831 So.2d 835. Once defendant has expressed a desire to deal with the police only through counsel, all successive officers who interact with defendant are deemed to have knowledge of this fact. State v. Arceneaux, 425 So.2d 740 (La.1983); see State v. Carter, 00-145 (La.App. 5th Cir.7/25/00), 767 So.2d 839, writ denied, 02-0227 (La.12/13/02), 831 So.2d 978.
In the present case, the parties stipulated that attorney Sims visited defendant at the jail on March 27, 2001. Sims testified that "at some point" she was retained to represent defendant and his sister in this criminal matter. However, Sims stated she did not recall whether she visited the defendant prior to his second statement or whether she told anyone not to talk to the defendant. Sims testified regarding her standard practice of identifying herself as an attorney to the jailer, but she did not recall the actual language she used that evening. Sims acknowledged that she did not telephone or write to notify the police of her representation and that she never spoke with a detective prior to defendant making a statement.
The trial court found that attorney Sims did not inform police that she was defendant's attorney and that the defendant neither invoked his right to have an attorney present at questioning nor informed the detectives that he was represented by counsel. The trial court's findings are supported by this record, which shows that defendant never expressed a desire to deal with police only through counsel. Thus, we cannot say the court erred in denying defendant's motion to suppress. The assignment of error lacks merit.

Ineffective Assistance of Counsel
The defendant contends the trial court erred in refusing to include in its jury charge an instruction that the state bore the burden of proving beyond a reasonable doubt that defendant did not act in self-defense. Defendant argues that his trial counsel was ineffective in failing to object to the court's error.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (pcr) in the trial court than by appeal. This is because pcr creates the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App. 2d Cir.6/21/00), 764 So.2d 1164. *824 However, when the record is sufficient, this court may resolve this issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
When a defendant claims self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986). A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Gaddis, 36,661 (La.App. 2d Cir.3/14/03), 839 So.2d 1258, writ denied, 03-1275 (La.5/14/04), 872 So.2d 519. An erroneous instruction is subject to harmless error review. Gaddis, supra; State v. Eskano, 00-101 (La.App. 5th Cir.1/30/01), 779 So.2d 148.
The question is whether it appears beyond a reasonable doubt that the erroneous instruction did not contribute to the jury's finding of guilt, or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. Gaddis, supra. Stated another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely unattributable to the jury charge error. Gaddis, supra.
In the present case, the trial court's instruction to the jury included the following language:
The defendant is presumed to be innocent until each element of the crime necessary to constitute guilt is proven beyond a reasonable doubt. The defendant is not required to prove his innocence; thus, the defendant begins the trial with a clean slate. The burden is upon the state to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.
The presumption of innocence is another way of saying that a person is not guilty until proven otherwise beyond a reasonable doubt. A legal presumption relieves the person in whose favor it exists from the necessity of any proof whatsoever. . . .
* * *
A homicide is justifiable, one, when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. Two, when committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
Although the trial court did not give a specific instruction regarding the state's burden of proof on the issue of self-defense, we note that the court instructed the jury that the state was required to prove each element of the crime beyond a reasonable doubt, that defendant was presumed innocent and that he did not need to present any evidence. Thus, a reasonable reading of the jury charge as a whole does not support defendant's contention *825 that the court improperly imposed on defendant the burden of proving self-defense.
Even if we accept for this argument that the trial court erred in omitting a specific instruction regarding the state's burden of proof on the self-defense issue, when considered in the context of the entire charge, along with the evidence of guilt presented at trial, we are convinced that no reversible prejudice to defendant occurred as a result of the error. There is little or no evidence in the record, other than defendant's own words in his statements, to suggest that this brutal and bloody crime was committed in self-defense. The coroner testified that the victim was stabbed and cut more than 60 times and his skull was fractured. Further, the victim's hands were cut across the palm and fingers, an indication that the victim was the person who was trying to defend himself against the defendant's attack.
In addition, the evidence produced demonstrated that defendant could not have reasonably believed he was in imminent danger of losing his life or receiving great bodily harm, and that defendant's response of repeatedly stabbing the victim was not necessary to prevent death or great bodily harm to himself. After reviewing the jury charge as a whole and the evidence in the record, we cannot say the guilty verdict was attributable to an erroneous jury charge. Thus, any error in the failure to include the self-defense instruction was harmless. Nor would defendant's claims of ineffective assistance of counsel for failure to object to the jury instructions have merit on these grounds. The assignment of error lacks merit.

Sentencing
Initially, we note that the record shows that after the defendant was sentenced, the trial counsel filed a timely motion for reconsideration of sentence. Although defendant's motion for appeal states that the motion to reconsider was denied, this record does not reflect that the trial court ever actually ruled on the motion. On appeal, both the defendant and the state urge that this matter be remanded to the trial court for a ruling on the motion to reconsider. In the alternative, defendant contends the trial court erred in imposing an excessive sentence. Defendant argues that a less severe sentence is appropriate because of his limited mental ability and the court's failure to consider that his prior felony was not a crime of violence.
Pursuant to LSA-C.Cr.P. art. 881.1, if the defendant has filed a motion to reconsider sentence then the district court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence. Defendant has the responsibility to obtain a ruling on his motion and to cause the appellate record to be supplemented with the ruling. State v. Lewis, 633 So.2d 318 (La.App. 1st Cir.1993).
This court has previously remanded for a ruling on the motion to reconsider. State v. Beverly, 34,783 (La.App. 2d Cir.2/15/01), 777 So.2d 1291. However, we conclude a remand is not necessary in this case since the defendant's claim in his motion to reconsider that the sentence is "excessive and unconstitutionally harsh" is sufficient to preserve a bare claim of constitutional excessiveness. If the trial court rules on defendant's motion, then that ruling will be separately appealable under Article 914.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State *826 v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385. The offense of manslaughter is punishable by imprisonment at hard labor for not more than 40 years. Thus, as a second felony offender the defendant was subject to a sentencing range of 20 to 80 years. LSA-R.S. 15:529.1. The trial court imposed a sentence of 65 years at hard labor.
Prior to imposing sentence, the trial court held an evidentiary hearing where the defense introduced into evidence a psychological report and presented witness testimony regarding defendant's diminished mental ability. The court considered the defendant's youth and mild mental retardation as mitigating circumstances. However, the court noted that this was a "horrible crime" in which the victim had been stabbed over 60 times, his skull was fractured and the victim was left lying in a pool of blood with a knife protruding from his neck. In addition, the court found that defendant's limited mental ability did not prevent him from making misleading statements to police to avoid telling the authorities what had actually happened at the victim's apartment on the night of the killing.
Considering the factual circumstances of this particular case and the defendant's criminal background, there is no showing that the district court abused its discretion in sentencing this defendant. The sentence imposed is neither grossly disproportionate to the seriousness of the offense committed nor shocking to the sense of justice. Thus, we cannot say the sentence is constitutionally excessive. The assignment of error lacks merit.
In a pro se assignment of error, the defendant contends the trial court made multiple unspecified errors before, during and after trial that will cause injustice if not corrected and requests a review of the record for error patent. We note that neither defendant nor his counsel specifically briefed this vague assignment of error. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978). In addition, defendant's request for an error patent review is unnecessary, since this court conducts such a review in all criminal cases. State v. Bryant, 29,344 (La.App. 2d Cir.5/7/97), 694 So.2d 556.

Error Patent
In reviewing the record for error patent, we note that although the district court minute entry, dated June 21, 2005, indicates that the sentence imposed denied the benefit of parole, probation or suspension of sentence, the transcript shows that the court did not impose sentence without benefit of parole, probation or suspension of sentence.
LSA-R.S. 15:529.1(G) provides that any sentence imposed under the habitual offender law is to be served without benefit of probation or suspension of sentence, but does not deny the benefit of parole. Pursuant to LSA-R.S. 15:301.1, the sentencing court's failure to state that a sentence shall be served without benefit of probation or suspension of sentence shall not affect the statutory requirement that the sentence be served without such benefits. We shall amend the sentence accordingly.

*827 CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. The sentence is hereby amended to order that defendant shall serve 65 years imprisonment at hard labor without benefit of probation or suspension of sentence, to run concurrently with any other sentence imposed.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.
BROWN, C.J., concurs with written reasons.
BROWN, Chief Judge, concurring.
When a defendant, as in this case, is sentenced to a prison term, the court does not have to say "without probation or suspension." Such words are superfluous and unnecessary.