999 So.2d 1197 (2009)
STATE of Louisiana, Appellee,
v.
Rodney MORRISON, Appellant.
No. 43,815-KA.
Court of Appeal of Louisiana, Second Circuit.
January 14, 2009.
*1200 Louisiana Appellate Project by W. Jarred Franklin, Paula Corley Marx, for Appellant.
Jerry L. Jones, District Attorney, Edward Dion Young, Charles Brumfield, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART & PEATROSS, JJ.
PEATROSS, J.
Defendant, Rodney Morrison, was convicted of aggravated rape, a violation of La. R.S. 14:42 and was sentenced to life imprisonment without benefit of parole probation, or suspension of sentence. Defendant now appeals. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.

FACTS
In August 2006, Defendant, who was 37 years old, was living with his wife and her 10-year-old daughter, T.J.,[1] in Bastrop, Louisiana. During this time, Defendant was also serving a sentence on a work release program. One day, T.J.'s aunt noticed that T.J. appeared to be gaining weight, so she did a home pregnancy test on the child. The home test was positive and T.J. was taken to a local doctor who confirmed that T.J. was six months pregnant. T.J.'s aunt then took her to the Bastrop Police Department where Detective Chuck Wilson[2] and Detective Marvin Holmes began investigating the complaint.
T.J. told Detective Wilson that Defendant had been having sexual intercourse with her ever since he married her mother in September 2005. T.J. also told Detective Wilson that Defendant would come to the house during working hours; and, if her mother was not at home, Defendant would have sex with her. T.J.'s mother confirmed that Defendant would frequently visit the home while he was supposed to be at his work release detail.
After interviewing T.J., Detective Wilson questioned Defendant. Defendant initially denied that he had sexual intercourse with T.J., but later, in a recorded statement, admitted to having intercourse with T.J. once in December 2005. Defendant was arrested and later indicted for aggravated rape. In November 2006, T.J. gave birth to a child but subsequent DNA testing revealed that Defendant was not the father of the child and this fact was stipulated to during Defendant's trial. At the conclusion of the trial, the jury found Defendant guilty of aggravated rape. Defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. This appeal ensued.

DISCUSSION
Assignment of Error Number One (verbatim): There is insufficient evidence to prove the guilt of defendant for the offense of aggravated rape beyond a reasonable doubt.
Defendant argues on appeal that the State failed to present sufficient evidence to meet its burden of proving that Defendant committed the crime of aggravated rape. Specifically, Defendant claims that the State failed to prove that he had engaged in an act of intercourse with T.J. Defendant alleges that T.J. had a motive to lie because she felt unfairly treated by Defendant because he required her to do more chores than the other children. Defendant further claims that T.J. had a second motive to lie because she wanted her mother and father to reunite. According to Defendant, T.J. was not credible because *1201 the child she gave birth to was not Defendant's child.
To the contrary, the State argues that the victim in this case is credible and had no motivation to lie. The State points out that Defendant's and T.J.'s stories regarding the alleged sexual encounters are similarly detailed. Additionally, the State contends that the transcript belies any argument that the victim is lying.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566 and 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, however, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 36,147 (La.App.2d Cir. 12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490. Such testimony alone is sufficient even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, supra; State v. Ponsell, supra.
At the time of the trial, the victim, T.J., was 13 years old. The court questioned T.J. prior to her testimony and she indicated she knew why she was in court and that she was required to tell the truth. T.J. testified that she recalled having sexual intercourse with Defendant 10-15 times between September and November 2005, the first time of which occurred in a park restroom when she was 10 years old. She testified that the other incidents occurred at their home, mainly in her bedroom during the night when everyone else was asleep. T.J. stated she did not want to have sexual intercourse with Defendant and did not know what intercourse was prior to her experiences with him. T.J. could not recall Defendant ever wearing a condom. T.J. testified that she did not know she was pregnant until her aunt took her to the doctor in August 2006. T.J. gave birth to her baby in November 2006 when she was 11 years old.
Defendant testified that, on the day he was arrested, he was on work duty when he was picked up and taken to the jail where he was interviewed by Detective *1202 Wilson and Detective Holmes. Defendant stated that he was informed by the detectives that they were investigating a rape charge and that T.J. had made the allegations against him. After signing a warning and waiver of rights form, Defendant admitted in a recorded statement to having sexual intercourse with the victim on one occasion in December 2005. Defendant later claimed that the recorded statement was untrue and the result of threatening and coercive tactics employed by the detectives.
Defendant was indicted by a grand jury on the charge of aggravated rape in violation of La. R.S. 14:42 A(4), which defines aggravated rape as:
A. A rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
La. R.S. 14:41 defines rape as:
A. The act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
The State proved through the testimony of T.J. that she was 10 years old the first time Defendant had sexual intercourse with her. During the trial, Defendant verified his age as listed on his marriage certificate which indicated he was 36 years old when the incidents began.
T.J. also testified that Defendant penetrated her vagina with his penis. Defendant asserts that this testimony should be judged in light of T.J.'s motive to get him out of the house. The jury, however, found the testimony of T.J. to be credible and rejected Defendant's theory regarding her bias. The jury's credibility determinations should not be disturbed by this court. The victim's testimony alone is sufficient to establish the elements of the offense of aggravated rape. State v. Robinson, supra; State v. Ponsell, supra. Further, we conclude that Defendant's tape recorded confession admitting to having sexual intercourse with the victim merely enhanced the State's case.[3] Thus, we find the evidence sufficient to support the jury's conclusion that Defendant was guilty of the offense of aggravated rape.
Assignment of Error Number Two (verbatim): The trial court erred by ruling that Defendant's statement to police was made freely and voluntarily.
Defendant argues that the State failed to carry its burden of proving that his confession was free and voluntary. According to Defendant, the length of the interrogation, the detectives' coercive tactics and Defendant's low level of education resulted in an unreliable confession. The State contends that there was no evidence presented indicating that unlawful police tactics were used during the investigation. The State further argues that the trial court properly admitted Defendant's recorded confession. We agree.
Before a confession can be introduced into evidence, the State must affirmatively prove that it was free and voluntary *1203 and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D); State v. Bowers, 39,970 (La.App.2d Cir.8/19/05), 909 So.2d 1038; State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, 00-1427 (La.5/11/01), 791 So.2d 1288. At a hearing on a motion to suppress a confession, the State bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. La. C. Cr. P. art. 703; State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, supra. The State must also establish that an accused who makes a statement during a custodial interrogation was first advised of his Miranda rights. State v. Bowers, supra; State v. Franklin, 35,268 (La.App.2d Cir.12/19/01), 803 So.2d 1057, writ denied, 02-0352 (La.2/7/03), 836 So.2d 85; State v. Roddy, supra.
The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000); State v. Dailey, 607 So.2d 904 (La. App. 2d Cir.1992). See also State v. Brown, 03-0897 (La.4/12/05), 907 So.2d 1. Great weight is placed upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Thibodeaux, supra; State v. Roddy, supra. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Bowers, supra.
Any mental incapacity is an important factor to consider in deciding the voluntariness of a confession. State v. King, 41,084 (La.App.2d Cir.6/30/06), 935 So.2d 815, writ denied, 06-1803 (La.2/16/07), 949 So.2d 411. Low intellect, moderate retardation or diminished mental capacity, however, does not per se and invariably vitiate capacity to make a free and voluntary statement or a knowing and intelligent Miranda waiver. State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005); State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272. Voluntariness is determined on a case-by-case basis, under a totality of the circumstances standard. State v. Manning, supra; State v. King, supra.
Detective Holmes and Detective Wilson conducted the investigation of Defendant's case and were present during the interrogation. Detective Holmes witnessed Defendant sign the warning and waiver of rights form. Defendant stated he initially refused to sign the warning and waiver of rights form, but decided to do so after Detective Wilson allegedly told him he could push for a life sentence, the death penalty or arrest Defendant's wife. Defendant testified that, at one point during the interrogation, Detective Wilson brought in a blue law book and read aloud to Defendant that he could get a life sentence or the death penalty. Defendant testified that he was a slow learner and became confused during the interrogation.
Detective Holmes and Detective Wilson were also both present during the taping of Defendant's recorded confession wherein Defendant admitted to having sexual intercourse with the victim on one occasion in December 2005. Defendant's statement confessing to the crime was lengthy and detailed. A hearing was held on the admissibility of Defendant's confession. During the hearing, Defendant testified on his own behalf and denied having "sexual *1204 relations" with the victim despite making a statement to the contrary. Defendant stated at the hearing that he usually understood his rights when he was being questioned.
Detective Holmes testified on behalf of the State at the hearing. Detective Holmes indicated that Defendant initially refused to sign the warning and waiver of rights form, so he wrote "refused" on the signature line. Later, Defendant agreed to talk with the detectives and signed his name on the warning and waiver of rights form next to the word "refused." Detective Holmes testified that Defendant was not threatened; and, specifically, there were no threats to "lock up" Defendant's wife. Detective Holmes stated that he believed Defendant understood his rights prior to making the recorded confession.
On cross-examination, Detective Holmes recalled that the interrogation began around 2:30 p.m. and the recorded statement was taken at 5:30 p.m. Detective Wilson spoke to Defendant prior to the statement being recorded and Detective Holmes testified that he did not see Detective Wilson bring "a law book" into the room during that time. Detective Holmes further stated that Defendant was not moved from room to room during the interrogation process and that Defendant's wife was not brought to the station until after Defendant began making his statement.
On cross-examination, Defendant acknowledged that the waiver of rights form was read to him before he signed it, but that he did not understand what "free and voluntary" meant because he had trouble with big words. Defendant also admitted saying he had told the truth at the conclusion of his statement. Defendant testified he gave the statement because he was shaken up and hurt by the accusations. Defendant further admitted that he recalled having given statements to detectives before when he was being investigated for two previous felony convictions prior to these proceedings. After the testimony, the trial judge ruled that the State established that Defendant's statement was free and voluntary and, therefore, admissible.
After a review of the transcript of the testimony in the case sub judice, we find no error in the trial court's admission of the evidence. The State established that Defendant had been advised of his rights and that he voluntarily waived them prior to making the recorded statement. There was no evidence that the statement was made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. The mere fact that Defendant was told that the crime of aggravated rape could carry a death penalty does not vitiate the voluntariness of the confession. At the time Defendant was interrogated in 2006, it was permissible for the district attorney to seek the death penalty for the crime of aggravated rape with a victim under age 13.[4] Further, Defendant's capacity was not so impaired that it would prevent him from comprehending his rights and determining whether or not to waive them. Defendant admitted he had been through the interrogation process before and that he told the detectives he knew his rights and wished to waive them. The trial judge was in the best position to make a credibility determination in this case and there is no showing of abuse of discretion by the trial judge.
*1205 This assignment of error is without merit.
Assignment of Error Number Three (verbatim): The trial court erred in granting the State's Motion in Limine.
During her statement to the police, T.J. allegedly told detectives that Defendant was the only person with whom she ever had sex. Prior to trial, the State filed a motion in limine requesting that the court instruct Defendant and all witnesses that they would be prohibited from referencing any other sexual encounters of T.J. on the grounds that such reference would be irrelevant, immaterial and a violation of La. C.E. art. 412. A hearing was held on the State's motion. The trial judge ruled at the hearing that the defense could not make any reference to T.J.'s prior sexual experiences during the trial. The trial judge noted, however, that the defense could use the statement to impeach inconsistent testimony of T.J., if any inconsistencies were revealed during her testimony. During the trial, Defendant began questioning T.J. regarding her prior sexual experiences. The State objected to the questioning as violating La. C.E. art. 412 and the trial court sustained the objection.
Defendant now argues that the trial court erred in excluding the statements made by T.J. The State contends that the issue falls within the confines of La. C.E. art. 412 and was, therefore, not admissible. We agree.
La. C.E. art. 412 provides:
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted.
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
La. C.E. art. 607 provides:
A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect *1206 of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
We find no error in the trial court's ruling. La. C.E. art. 607 provides that extrinsic evidence offered to show a witness's bias, interest, corruption or defect of capacity is admissible to attack the credibility of the witness. Prior inconsistent statements are admissible when offered to attack the credibility of a witness. The article notes that the evidence is admissible "except as otherwise provided by the legislature." La. C.E. art. 607 D. Evidence of a victim's past sexual experience is inadmissible under La. C.E. art. 412. While the article does provide two exceptions, neither is applicable under the circumstances of this case.
Before a witness's credibility may be attacked by using a prior inconsistent statement, La. C.E. art. 613 requires that the witness's attention be called to the inconsistency and that the witness be given the opportunity to acknowledge the prior statement. State v. Logan, 36,042 (La. App.2d Cir.6/14/02), 822 So.2d 657.
Defendant argues that he was attempting to show that T.J. was untruthful in her statement to police. Significantly, however, during her trial testimony, T.J. admitted that she initially told detectives that Defendant was the only person with whom she had ever had sex. Since the victim did not deny making the prior statement, the defense could no longer claim to be using the line of questioning regarding her prior statement for the purpose of impeaching the witness.
Furthermore, La. C.E. art. 412 is intended to protect the victim from improper character attacks by the accused. The article's purpose is to prevent or "shield" sex crime victims from having irrelevant, prejudicial and embarrassing information about their past sexual activity brought out in trial. State v. Roberts, 33,814 (La. App.2d Cir.9/27/00), 769 So.2d 162. The defense was able to adequately advance its position that T.J. was untruthful by use of the stipulation entered into with the State that Defendant was not the father of the child as well as with T.J.'s trial testimony admitting to her earlier false statement that she had only had sex with Defendant. Further inquiry into the issue would likely have yielded information regarding the victim's other sexual experiences and, thus, would have been prohibited by La. C.E. art. 412.
This assignment of error is without merit.
Assignment of Error Number Four (verbatim): The sentence imposed is excessive for this offender and offense.
Defendant argues that the mandatory life sentence imposed in this case is unconstitutionally excessive in that it serves no purpose other than the needless infliction of pain and suffering. The State contends that the sentence is legal, valid and that it is not excessive.
La. R.S. 14:42D(1) provides:
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Where there is a mandatory sentence, there is no need for the trial court *1207 to justify, under article 894.1, a sentence it is legally required to impose. State v. Williams, 41,731 (La.App.2d Cir.1/24/07), 950 So.2d 126; State v. Burd, 40,480 (La. App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35; State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503.
Defendant fails to articulate facts or circumstances that would require or justify a downward departure from the mandatory sentence in this case. Defendant further fails to show by clear and convincing evidence that he is exceptional or that, because of unusual circumstances, he is the victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. See State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La. 1993). Defendant simply states that the sentence is constitutionally excessive without further elaboration on the issue.
This court has consistently upheld the mandatory life sentence for this offense. State v. Williams, supra; State v. Chandler, 41,063 (La.App.2d Cir.9/8/06), 939 So.2d 574; State v. Taylor, 36,066 (La. App.2d Cir.6/12/02), 821 So.2d 633; State v. Abbott, 29,497 (La.App.2d Cir.6/18/97), 697 So.2d 636. While the trial court is not required to justify this mandatory sentence, the facts and circumstances of this case adequately justify the sentence for this third felony offender. The imposition of this sentence on Defendant does not shock the sense of justice. On this record, we find no constitutional error. There is no showing of an abuse of the trial court's discretion in the imposition of this sentence.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Rodney Morrison, are affirmed.
AFFIRMED.
NOTES
[1] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).
[2] Detective Chuck Wilson was killed in the line of duty prior to the hearing and trial.
[3] This will be further addressed in the following discussion of Assignment of Error Two, the tactics employed by the detectives in obtaining Defendant's confession were not coercive and did not vitiate the confession.
[4] The U.S. Supreme Court held that the Eighth Amendment prohibited imposition of the death penalty in child rape cases where the crime did not result in or was not intended to result in death. Kennedy v. Louisiana, ___ U.S. ___, 128 S.Ct. 2641, 171 L.Ed.2d. 525 (2008).