LOLLEY, J.
_J_¡This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, whereby a jury convicted the defendant, Demarcus Cartez Jones, of second degree murder, a violation of La. R.S. 14:30.1. After the trial court denied Jones’s post-verdict motions for acquittal and new trial, he was sentenced to serve the mandatory term of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Jones now appeals his conviction and sentence. For the following reasons, we affirm.
Facts
On July 19, 2008, a group of men, including the defendant, Demarcus Jones, his codefendant, Demond Carey, and the victim, Lonzell Armstrong, were gathered at an area referred to as the tree, which is located on a vacant lot near the Quick Pack convenience store on David Raines Road in Shreveport, Louisiana (“the tree”). An argument ensued, which led to Armstrong leaving the group but returning a short time later with a gun. When Armstrong returned, Heston Smith, a friend to all parties involved, was able to talk Armstrong into returning to his truck. However, as Smith was encouraging Armstrong to leave, Jones and Carey approached from behind and shot Armstrong multiple times as he sat in his truck. Armstrong managed to drive a short distance away, but quickly succumbed to his injuries and died. Once in custody, Jones admitted that he shot Armstrong, but claimed that he did so in self-defense.
Jones was indicted by a Caddo Parish grand jury and charged with second degree murder. Pursuant to a plea agreement with the state, Jones 1 gpled guilty to manslaughter. Jones agreed to a 15-year sentence if he testified against his codefen-dant, or a 17-year sentence if he refused to testify. However, against his attorney’s advice, Jones voluntarily withdrew his guilty plea.[1]
Jones’s jury trial included the admission of physical evidence as well as the testimony of 11 witnesses, many of whom were police officers or detectives involved in the investigation of the case. Two eyewitnesses also testified. The summary of the pertinent evidence is as follows.
On July 19, 2008, Corporal Kelley Mor-man of the Shreveport Police Department was dispatched to a shooting incident on Nena Street, not far from the Quick Pack convenience store on David Raines Road. Corporal Morman explained to the jury that there were two crime scenes — one at the Quick Pack and the other on Nena Street. Upon arrival at the Nena Street location, Corporal Morman testified that a gray pickup truck was positioned in the middle of the road with the engine running. The windows were shot out and a handgun was found on the floorboard. Blood was splattered throughout the truck, *595 and a man who was later identified as Lonzell Armstrong was slumped over in the driver’s seat.
Contemporaneously, Sergeant Collette Kelly arrived at the Quick Pack location. Sergeant Kelly testified that she observed several spent shell casings on the ground and also noticed that one of the convenience store windows had been shot out. Sergeant Kelly informed the jury that she, |salong with other officers, secured the crime scene and attempted to locate potential witnesses. After an investigation, it became known that Heston Smith and Roy Riley were eyewitnesses to the shooting.
Riley and Smith testified at trial and provided almost identical recollections of the shooting. Both stated they were present for the shooting, but were not present for the earlier argument which led to Armstrong returning with a gun. Riley and Smith told the jury that when they arrived at the tree, everything seemed normal. However, shortly after they arrived, someone in the group said “there he is” or “there he go,” when both Riley and Smith turned around and identified that person to be Lonzell Armstrong. Riley and Smith testified that Armstrong was walking toward the group with a gun.[2] Smith then said “I got this,” and took off toward Armstrong and began to speak with him. Riley explained that he was unable to hear Smith and Armstrong’s conversation, but did see them return to Armstrong’s truck. When asked what was said to Armstrong, Smith revealed that he urged Armstrong to return to his truck, and told him that he was out-gunned and needed to leave. Smith and Riley stated that Armstrong then entered his truck. However, Armstrong did not leave; he just sat in his truck, with his hand on the gun, which was lying across the seat of his truck.
Meanwhile, Riley, who remained under the tree, saw Jones pull out a gun and start to walk in the direction of Armstrong’s truck. Riley explained that he pleaded with Jones to “come on back” and let Smith handle the ^situation. Smith also saw Jones approaching Armstrong’s truck, and testified that he too pleaded with Jones to “go on.” However, Jones ignored both requests, approached the driver’s side of the truck, and began to shoot. Carey then approached the rear of the truck and started to shoot.
Following the shooting, Riley and Smith noted that Jones and Carey fled in opposite directions. They also saw Armstrong speed out of the parking lot in the direction of Nena Street. Riley and Smith further testified that Jones was the first to shoot. Both were also uncertain if Armstrong ever returned fire. Moreover, Riley and Smith informed the jury that Armstrong’s back was turned to the group as he sat in the truck.
Forensic pathologist Dr. James Traylor conducted an autopsy and confirmed that Armstrong died as a result of multiple gunshot wounds. Dr. Traylor found six gunshot wounds on Armstrong’s body-three penetrating and three perforating. Dr. Traylor was able to recover the three bullets which did not exit the body. He also noted that Armstrong’s body contained signs of “tattooing,” which is evidence that the victim was shot at an intermediate distance, i.e., 6 to 18 inches. Notably, Dr. Traylor explained that the track of the wounds suggests that the bullets were fired from the victim’s left side.
*596 In describing the evidence that was collected from the two crime scenes, officers testified that they recovered a .22 caliber Smith and Wesson revolver from the floorboard of Armstrong's truck and six .40 caliber shell casings, two bullets, one bullet jacket, and two bullet cores from the Quick | BPack parking lot. The revolver contained four spent cartridges and two live cartridges. No other firearms were recovered from either location.
These items were submitted to the North Louisiana Crime Lab for analysis. Richard Beighley, an expert in firearms identification and analysis, studied the projectiles and testified at trial. His analysis revealed that there were at least two weapons fired during the shooting — a .40 caliber and a .38/.357 caliber firearm.[3] Beighley also determined that the projectiles recovered from Armstrong’s body were consistent with a .40 caliber firearm. Additionally, Beighley testified that the four spent .22 caliber cartridges were fired from the revolver found in Armstrong’s truck. However, he was unable to determine if the cartridges were fired on the day of the shooting.
Jones was apprehended approximately ten days after the shooting. He initially declined to make a statement to the investigating detectives, but later requested to speak with Detective Rod Demery. Detective Demery testified that Jones asked to speak with him so that he could explain his role in Armstrong’s shooting. Detective Demery informed the jury that Jones claimed the shooting was in self-defense and not murder. Jones revealed to Detective Demery that on the day of the shooting, Armstrong made threats toward Jones. Specifically, Jones stated that Armstrong told him that he was the first and second killer, he ran Cooper Road, and it was him who was | figoing to do the killing. Thus, when Armstrong returned to the group with a pistol, Jones was acting in self-defense when he shot and killed Armstrong.[4]
Jones declined to testify at trial. The case was submitted for deliberation, and by a vote of 11-1, Jones was found guilty as charged of second degree murder. Thereafter, Jones waived sentencing delays, and the trial court sentenced him to life imprisonment without benefits.
Discussion
On appeal, Jones’s appellate counsel brings one assignment of error, along with three assignments of error raised by Jones in his pro se capacity.

Sufficiency of the Evidence

Jones contends that the evidence adduced at trial was insufficient to support a conviction of second degree murder. Specifically, Jones argues that the state failed to prove that he was not acting in self-defense when he shot and killed Armstrong. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1685 (La.05/20/03), 851 So.2d 921, cert, denied, 541 U.S. 905, 124 S.Ct. 1604, *597 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, unit denied, 2008-0499 (LajH/14/08),7 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App.2d Cir.01/14/09), 1 So.3d 833, unit denied, 2009-0310 (La.11/06/09), 21 So.3d 297. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness. State v. Casey, 1999-0023 (La.01/26/00), 775 So.2d 1022, cert, denied, 531 U.S. 840, 121 S.Ct. 104,148 L.Ed.2d 62 (2000). The reviewing coui’t may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. Id.
Further, the appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, unit denied, 2009-0725 (La.12/11/09), 23 So.3d 913.
Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). However, a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger. La. R.S. 14:20(A)(1). Factors considered |Rare the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant’s knowledge of the assailant’s bad character. State v. Wright, 42,956 (La.App.2d Cir.03/05/08), 978 So.2d 1062, writ denied, 2008-0819 (La.10/31/08), 994 So.2d 532.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Cook, 46,-843 (La.App.2d Cir.01/25/12), 86 So.3d 672, writ denied, 2012-0640 (La.06/22/12), 91 So.3d 969. Thus, when the defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. Id.
As noted, the state presented physical evidence recovered from both crime scenes, the testimony of police officers and detectives involved in the investigation of the case, and the testimony of two eyewitnesses to the shooting-Roy Riley and Heston Smith. All of the testimony was consistent and established that a group of individuals, including Armstrong, Jones, and Carey, were gathered at a spot known as the tree on David Raines Road. After a heated argument, Armstrong left the group but returned a short time later with a gun. Meanwhile, Smith and Riley arrived at the tree. Upon Armstrong’s arrival with a gun, Smith immediately approached Armstrong and convinced him to return to his truck. Armstrong then entered his truck, |nwith his back to the group and the tree. Jones then pulled out a gun, ignored requests from both Smith and Riley, approached the driver’s side of Armstrong’s truck, and shot Armstrong multiple times. Carey approached from the rear and also began to shoot. Armstrong then sped away in the direction of Nena street where he was later found dead.
*598 The jury heard evidence that two weapons were used in the commission of the crime — a .40 caliber and a ,38/.357 caliber firearm. Additionally, .40 caliber and .38/ .357 caliber projectiles were found at the Quick Pack location. The jury then heard evidence from Dr. Traylor, who confirmed that Armstrong died of multiple gunshot wounds from a .40 caliber weapon. Dr. Traylor also testified that each gunshot wound came from Armstrong’s left side, or the driver’s side of the vehicle.
After an extensive review of the record, and considering all of the evidence presented at trial in the light most favorable to the prosecution, we conclude that the state presented sufficient evidence such that a rational trier of fact could have concluded beyond a reasonable doubt that Jones was not acting in self-defense when he shot Lonzell Armstrong. In particular, there was no evidence to support the defendant’s contention that he reasonably believed he was in imminent danger of losing his life or receiving great bodily harm, such that deadly force was necessary to save his life. The jury, as a fact finder, was in its province to accept or reject the testimony of both Roy Riley and Heston Smith, as well as the numerous officers and detectives that testified at trial. It is clear that the excitement and the confusion of the situation settled once Smith talked Armstrong into |inreturning to his truck. Further, there were a number of possible alternatives short of killing Armstrong that Jones could have undertaken to quell the situation. Accordingly, Jones’s argument that the shooting was committed in self-defense is without merit.

Pro Se Assignments of Error

In Jones’s supplemental pro se appellate brief, he brings three assignments of error, all related to various issues. First, Jones argues that the trial court breached its plea bargain of a 17-year sentence if he refused to testify against his codefendant. Jones contends that since he did not testify at Carey’s trial, he should be entitled to the 17-year sentence as promised by the state. However, Jones voluntarily withdrew his guilty plea, thereby for going the benefit of the reduced sentence and the plea agreement presented by the state. As a result, we find this assignment of error to lack merit.
Jones’s second assignment of error seems to suggest that Roy Riley’s eyewitness testimony contained statements not included in the transcript. However, this assignment of error is not supplemented with any argument. It is well established that assignments of error which are neither briefed nor argued are considered abandoned. U.R.C.A. Rule 2-12.4; State v. King, 41-084 (La.App.2d Cir.06/30/06), 935 So.2d 815, writ denied, 2006-1803 (La.02/16/07), 949 So.2d 411.
In his final assignment of error, Jones argues that Riley and Smith both gave perjured testimonies when they testified that it was Jones, rather than Carey, who shot first. Jones claims that when Smith and Riley testified at his codefendant’s trial, both stated they did not know who shot first. |n However, the detectives who interviewed Riley and Smith shortly after the shooting all testified that the two witnesses stated Jones was the first to shoot. It was after Jones started to shoot that Carey approached the rear of the vehicle and began to fire. Therefore, there is no support for this claim, and this assignment of error is also without merit.
Conclusion
Considering the foregoing, the conviction and sentence of Demarcus Cartez Jones is affirmed.
AFFIRMED.

. A contradictory hearing was held to address Jones's withdrawal of his guilty plea. At the hearing, Jones claimed that he pled guilty only because he was not feeling well that day, he was misled by his attorney, the prosecution suggested that his codefendant would testify against him, and the prosecution failed to offer less than a 17-year sentence.

. At trial, Riley testified that Armstrong was carrying a gun in his hand. However, Smith testified that the gun was in the waistband of Armstrong’s pants. Nevertheless, both men agreed that Armstrong arrived at the scene with a gun.

. Beighley explained to the jury that a .357 caliber weapon is able to fire a .38 caliber cartridge.

. A transcript of Jones’s interview with Detective Demery was introduced at trial as State’s Exhibit 61, with certain hearsay portions redacted. Jones's statement was later determined to be freely and voluntarily made at a pretrial hearing.